DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Terry Owens, appeals his conviction entered by the Lucas County Court of Common Pleas in the above-captioned case. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On November 16, 2004, appellant was indicted on a single charge of felonious assault with a firearm specification, a felony of the second degree. On *Page 2 
April 25, 2005, the matter proceeded to jury trial. At that time, the following facts were adduced.
 {¶ 3} In the afternoon of November 7, 2004, witness Marlon Findley was working as a clerk at Macomber's Market, a convenience store located in Toledo, Ohio. Findley's sister, Shakka Findley, was also in the store. She was standing behind the front door, when, suddenly, appellant swung the door open, striking her with it as he entered. Words were exchanged between Marlon and appellant, and Marlon told appellant to leave. Appellant's companion, El Rico Martin ("Rico"), intervened in the dispute and stated that he and appellant simply wanted to make their purchase and move on. After buying a bottle of Wild Irish Rose, he and appellant left the premises.
 {¶ 4} Approximately ten minutes later, complaining witness James Galloway came into the store and took his position behind the counter. Like Marlon, he worked as a clerk at the store. He was talking to his friend, Anthony Sanders, when appellant, once again, entered through the front door. Sanders, who was standing close to the door, saw that appellant had a gun and immediately alerted Galloway. According to Galloway, the gun was a small caliber, black revolver. Appellant pointed the gun at Sanders, then turned and shot Galloway in the left shoulder. Galloway was preparing to try to grab appellant over the counter, when appellant shot him several more times in the abdomen. Galloway retreated, but appellant continued shooting, hitting the cash register and a glass cooler that was near the counter. After firing those final rounds, appellant ran out of the store. *Page 3 
 {¶ 5} Police arrived and secured the scene. Once they had completed their work and left the store, Marlon searched the neighborhood, looking for appellant. When Marlon found appellant, appellant ran, and Marlon and several other males gave chase. Police were summoned, and appellant, who at that point appeared to be in need of medical attention, was taken to the hospital for evaluation and treatment.
 {¶ 6} The following day, a Toledo police officer went to the hospital where Galloway was recovering, and presented him with a photo array, which included a photograph of appellant. Galloway, who had never met appellant prior to the November 7, 2004 shooting, immediately identified appellant as his assailant.
 {¶ 7} At trial, witness Roy Right provided the following additional, corroborating, evidence. According to Right, on the morning of November 7, 2004, appellant and Rico visited Right's home, where they all began drinking. At the time, Right noticed that appellant had brought with him a black, long-barreled .22 caliber handgun. Sometime during the afternoon, appellant and Rico left Right's house to go to the store. Right recalled that when they left, appellant took the gun with him. Upon appellant's return later that afternoon, appellant repeatedly stated that he was sorry, but did not offer any explanation as to why. He left the house again, and shortly thereafter was apprehended by police in connection with this case.
 {¶ 8} After all of the evidence was presented, the jury returned a verdict of guilty on both the felonious assault charge and the attendant gun specification. On May 25, 2005, the trial court sentenced appellant to serve six years in prison for the felonious *Page 4 
assault and three years in prison for the gun specification, with each term to be served consecutively, for a total period of incarceration of nine years.
 {¶ 9} An appeal was timely filed on appellant's behalf On May 30, 2006, appellant's appellate counsel filed a motion for leave to withdraw pursuant to Anders v. California (1967), 386 U.S. 738. In a decision dated January 16, 2007, this court denied the motion on the grounds that the brief attached to appellant's motion was not an Anders brief, but rather was a brief that alleged errors, argued that mistakes were made in the proceedings below, and urged this court to overturn appellant's conviction.
 {¶ 10} We now consider those alleged errors and arguments in support thereof[1] Counsel for appellant raised the following sole assignment of error:
 {¶ 11} I. "THE FAILURE OF DEFENSE COUNSEL TO CONSISTENTLY OBJECT TO VARIOUS RULINGS BY THE JUDGE RESULTED IN INEFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 12} In order to prove a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the defendant was prejudiced by counsel's ineffectiveness. *Page 5 Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 13} Here, we review three specific instances cited by appellate counsel in support of appellant's claim for ineffective assistance of counsel. In each case, we must determine whether trial counsel's performance fell below an objective standard of reasonableness.
 {¶ 14} First, appellate counsel alleges that trial counsel erred when he failed to request curative admonishment for a statement made by witness Marlon Findley on redirect examination. The statement occurred during the following exchange, after the prosecutor asked Findley whether Anthony Sanders was present when appellant was captured:
 {¶ 15} FINDLEY: "Yes, sir."
 {¶ 16} PROSECUTOR: "Okay. Did Mr. Sanders say anything to Mr. Owens?"
 {¶ 17} DEFENSE COUNSEL: "Objection."
 {¶ 18} FINDLEY: "Yeah. He identified him."
 {¶ 19} DEFENSE COUNSEL: "Objection. Objection. May we approach the bench, please?"
 {¶ 20} THE COURT: "Yes."
 {¶ 21} (The following discussion was held at the bench.) *Page 6 
 {¶ 22} DEFENSE COUNSEL: "Judge, I think that's mistrial material. He can't be testifying to what Mr. Sanders did, particularly something as crucial an issue as identification unless we got Sanders available to testify."
 {¶ 23} PROSECUTOR: "I asked him if he said anything. I was looking for a yes or no answer, not what he said. I wasn't going to ask him what he said."
 {¶ 24} DEFENSE COUNSEL: "You asked him did he identify him."
 {¶ 25} PROSECUTOR: "No, I didn't. I asked him if he saw him."
 {¶ 26} DEFENSE COUNSEL: "If you want-"
 {¶ 27} PROSECUTOR: "If I asked that question, I did not mean to ask him if he identified him. I asked him if he saw the person they had caught."
 {¶ 28} THE COURT: "Just one moment. Could you go back and read that back so I know what was said?"
 {¶ 29} (Thereupon, the court reporter read back the following questions and answers:
 {¶ 30} Q: "And you saw him. He was there when — or came up when Mr. Owens was captured?"
 {¶ 31} A: "Yes sir."
 {¶ 32} Q: "Okay. Did Mr. Sanders say anything to Mr. Owens?"
 {¶ 33} DEFENSE COUNSEL: "Objection." *Page 7 
 {¶ 34} A: "Yeah. He identified him.")
 {¶ 35} THE COURT: "If you want me to, I don't want to highlight anything for them where we are. But if you want me to, I'll order that part of the response of the witness to be stricken. But in doing that, I'll be highlighting the fact that that's what he said."
 {¶ 36} DEFENSE COUNSEL: "All right. I'm going to not ask you to make any further reference to it because we don't want to highlight it at this point."
 {¶ 37} THE COURT: "All right."
 {¶ 38} Clearly, defense counsel made a reasonable tactical decision not to highlight the witness's statement. There were no further questions of this witness about Anthony Sanders, and there was no further testimony that Anthony Sanders identified appellant as the perpetrator in this case.
 {¶ 39} Moreover, in light of the abundance of proper identification evidence in this case — including Galloway's in-court and photo array identifications, Findley's in-court identification, and Right's in-court identification — we find that even if counsel's performance had been ineffective (although we expressly found that it was not), appellant was not prejudiced by his counsel's performance.
 {¶ 40} Appellant next argues that his trial counsel should have had a juror removed for having overheard a conversation outside of the courtroom. The alleged conversation was between two detectives and two witnesses who had already testified. *Page 8 
Both the court and defense counsel questioned the juror about the matter in an in camera conference. The juror repeatedly and consistently denied having heard the alleged conversation.
 {¶ 41} Here, defense counsel clearly attempted to uncover any problem concerning the juror and any outside influence that may have affected her. As there was no evidence of such a problem, counsel's failure to request the juror's removal was entirely reasonable and, therefore, did not constitute ineffective assistance of counsel.
 {¶ 42} The third instance that appellant cites in support of his claim for ineffective assistance of counsel occurred during the prosecutor's direct examination of Toledo Police Officer Richard Trevino, when Trevino was asked whether he had told appellant the reason for his being transported downtown. There, the following exchange took place:
 {¶ 43} TREVINO: "I did concur or I did state that there was an investigation concerning a shooting earlier."
 {¶ 44} PROSECUTOR: "Did [appellant] make any statements to you at that time?"
 {¶ 45} TREVINO: "He denied any allegation-"
 {¶ 46} DEFENSE COUNSEL: "Objection, Your Honor." *Page 9 
 {¶ 47} THE COURT: "Well, let me see counsel up here [.]"
 {¶ 48} (The following discussion was held at the bench.)
 {¶ 49} DEFENSE COUNSEL: "What are you doing? I'm objecting to this thing because I'm trying to listen to either he has laid a foundation or he hasn't laid a foundation he has been Mirandized."
 {¶ 50} PROSECUTOR: "Well, I just want to know if he said anything else. I'll withdraw the question."
 {¶ 51} THE COURT: "Okay."
 {¶ 52} PROSECUTOR: "Okay. Okay. That's-"
 {¶ 53} (End of discussion at bench.)
 {¶ 54} PROSECUTOR: "Your honor, state will withdraw that question."
 {¶ 55} Here, defense counsel objected at an appropriate time and for an appropriate reason. Following that objection and discussion at the bench, the prosecutor withdrew his question. Counsel's advocacy in this case was clearly protective of appellant's rights and was, in fact, effective.
 {¶ 56} Arguing against this conclusion, appellant states that defense counsel was ineffective for failing to request an instruction to the jury to disregard the witness's statements. At the outset, we note that Trevino testified that appellant had "denied any allegation." This statement was in no way inculpatory of appellant and, therefore, was *Page 10 
harmless to appellant's case. Counsel's failure to request an unnecessary curative instruction does not amount to ineffective assistance of counsel.
 {¶ 57} Appellant argues, in a pro se memorandum, that defense counsel was ineffective for a variety of additional reasons. We will consider each one separately.
 {¶ 58} First, appellant claims that defense counsel was ineffective for failing to bring witnesses to court that would have given testimony on his behalf. "[A]n attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective of counsel." State v. Yarbrough, 3d Dist. No. 17-2000-10, 2001-Ohio-2351. Here, appellant fails to demonstrate that his trial counsel's decision not to call witnesses was anything other than sound trial strategy. Accordingly, this argument not well-taken.
 {¶ 59} Next, appellant claims that his trial attorney was ineffective because he failed to properly investigate appellant's case. In making this claim, appellant makes no mention at all as to how his attorney's investigation was deficient. Without more, appellant cannot demonstrate that counsel's performance fell below an objective standard of reasonableness.
 {¶ 60} Appellant also claims that his defense counsel was ineffective because he failed to "make an effective pre-sentence report." This claim does not even hint at a cognizable claim for ineffective assistance of counsel in this case. Here, after the court found appellant guilty in accordance with the jury verdict, the court referred appellant to the Lucas County Probation Department for presentence investigation and report. The *Page 11 
investigation was conducted as ordered, and the report prepared. As that process did not call for the involvement of defense counsel, his alleged deficiencies with respect to that process do not support a claim for ineffective assistance.
 {¶ 61} Next, appellant claims that his trial counsel was ineffective because he did not object to the failure of police, upon appellant's arrest, to check him for powder burns. During cross-examination of Toledo Police Officer Craig Smith, defense counsel brought out the fact that police had conducted no tests on appellant to determine whether he had recently fired a handgun. Such was a proper tactic for establishing reasonable doubt. The failure to check appellant for powder burns was not, as appellant suggests, a matter appropriately objected to at trial.
 {¶ 62} Appellant further claims that his counsel was ineffective for failing to bring into evidence the fact that no weapon was found on appellant, and that the gun used to shoot Galloway was never recovered. Contrary to appellant's claim, during cross-examination of Officer Smith, defense counsel did elicit the fact that police did not find a handgun or .22 caliber bullets on appellant's person at the time of his arrest. Appellant's assistance in this regard was reasonable and effective.
 {¶ 63} Finally, appellant, citing State v. Deal (1969),17 Ohio St.2d 17, claims that it was plain error for the trial court to fail to consider his ineffective assistance of counsel claim. The Supreme Court of Ohio in Deal stated at its syllabus:
 {¶ 64} "Where, during the course of his trial for a serious crime, an indigent accused questions the effectiveness and adequacy of assigned counsel, by stating that *Page 12 
such counsel failed to file seasonably a notice of alibi or to subpoena witnesses in support thereof even though requested to do so by accused, it is the duty of the trial judge to inquire into the complaint and make such inquiry a part of the record. The trial judge may then require the trial to proceed with assigned counsel participating if the complaint is not substantiated or is unreasonable."
 {¶ 65} Here, there is nothing in the record to show that appellant ever questioned the effectiveness and adequacy of his counsel at any time prior to his appeal. As Deal involves complaints lodged during the course of his trial, rather than on appeal, it is inapplicable to our decision herein.
 {¶ 66} In reviewing the trial transcript, we find that defense counsel asked pertinent questions during cross-examination, objected at appropriate times, and made a cogent, logical, and strong argument in favor of acquittal. We additionally find that the evidence in this case was abundantly sufficient to support the jury's verdict of guilty.
 {¶ 67} For all of the foregoing reasons, appellant's first assignment of error and other arguments are found not well-taken, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 13 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J. CONCUR.
[1] We note that appellant, himself — perhaps anticipating that theAnders motion would be granted — filed a pro se memorandum containing additional arguments in favor of reversing his conviction. Although theAnders motion was, in fact, denied, we find that, given the unusual procedural history of this appeal, the interests of justice would best be served by according those additional arguments consideration herein. Our decision will reflect that consideration. *Page 1